Cruz v 11 Hoyt Prop. Owner, L.P. (2024 NY Slip Op 50895(U))

[*1]

Cruz v 11 Hoyt Prop. Owner, L.P.

2024 NY Slip Op 50895(U)

Decided on July 12, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 12, 2024
Supreme Court, Kings County

Abimael Trujillo Cruz, Plaintiff,

against
11 Hoyt Property Owner, L.P. and TRITON CONSTRUCTION COMPANY, LLC, Defendants.

Index No. 521854/2018

Lewis Brisbois Bisgaard & Smith LLP, New York City (Inderjit Dhami of counsel), for Defendants.
Liakas Law, P.C., New York City (Anthony M. Deliso of counsel), for Plaintiff.

Aaron D. Maslow, J.

The following numbered papers were read on this motion:
Submitted by Defendants
NYSCEF Doc No. 133: Notice of Motion
NYSCEF Doc No. 134: Affirmation of Inderjit Dhami, Esq. in Support of Motion
NYSCEF Doc No. 135: Summons and Complaint
NYSCEF Doc No. 136: Defendants' Verified Answer
NYSCEF Doc No. 137: Plaintiff's Verified Bill of Particulars
NYSCEF Doc No. 138: Preliminary Conference Order and Subsequent Discovery Orders
NYSCEF Doc No. 139: Plaintiff's Deposition Transcripts
NYSCEF Doc No. 140: Deposition Transcript of Defendant Triton Construction Company, LLC (Iniubong Usen)
NYSCEF Doc No. 141: Deposition Transcript of Defendant Triton Construction Company, LLC (Daniel Gordon)
NYSCEF Doc No. 142: Note of Issue and Certificate of Readiness for Trial
NYSCEF Doc No. 143: Plaintiff's Statement
NYSCEF Doc No. 144: Statement of Plaintiff's Supervisor, Kristjan Haxhari
NYSCEF Doc No. 145: Statement of Medic Saidou Niampa
NYSCEF Doc No. 146: Accident Reports
NYSCEF Doc No. 147: Photographs of Accident Location
NYSCEF Doc No. 148: Triton Construction Company, LLC Project Manual
NYSCEF Doc No. 149: StructureTech Corporate Health and Safety Plan
NYSCEF Doc No. 150: Construction Management Agreement
NYSCEF Doc No. 151: Statement of Authorization for Electronic Filing
NYSCEF Doc No. 152: Affidavit of Eyewitness Luis Sarmiento
NYSCEF Doc No. 153: Defendants' Statement of Undisputed Facts
NYSCEF Doc No. 154: Defendants' Memorandum of Law
NYSCEF Doc No. 155: Order with Notice of Entry, Entered on February 23, 2024
NYSCEF Doc No. 156: Defendants' Statement of Undisputed Facts
NYSCEF Doc No. 157: Defendants' Memorandum of Law
NYSCEF Doc No. 158: Order with Notice of Entry, Entered on February 23, 2024
Submitted by Plaintiff
NYSCEF Doc No. 159: Affirmation of Anthony M. Deliso, Esq. in Opposition to Motion
NYSCEF Doc No. 160: Plaintiff's Post-EBT Demands, Dated February 21, 2023
NYSCEF Doc No. 161: Defendants' Response to Plaintiff's Post-Deposition Demands
NYSCEF Doc No. 162: Affidavit of Euferlia Hernandez
NYSCEF Doc No. 163: Plaintiff's Affidavit with Affidavit of Translation
NYSCEF Doc No. 164: Plaintiff's Counter-Statement of Materials Facts
Submitted by Defendants
NYSCEF Doc No. 165: Reply Affirmation of Inderjit Dhami, Esq. in Further Support of Motion
Upon the foregoing papers and having heard oral argument on the record from appearing counsel, the within motion is determined as follows.
Preamble
The present action features an oft-recurring paradigm in the Labor Law arena, namely, a plaintiff sustaining injuries tangentially attendant to the use of a ladder. This case serves as a cautionary tale of sorts for the practitioner that the mere presence of a ladder on a construction site does not ineluctably cloak an injured worker's case with the panoply of statutory protective accoutrements afforded construction workers under the auspices of our State's beneficent Labor Laws.
As this case aptly illustrates, a plaintiff's most formidable foe in the Byzantine Labor Law context frequently resides not in the defense, but, rather, in the faint specter hovering over scores of Labor Law cases, to wit, the workers' compensation bar afforded employers, which operates to immunize from liability the entity typically best suited as a litigation target for the injured worker.
The Relief Sought by Defendants
Defendants 11 Hoyt Property Owner, L.P. and Triton Construction Company, LLC ("Defendants") move for an order granting summary judgment dismissing Plaintiff Abimael Trujillo Cruz's ("Plaintiff") complaint as to his Labor Law 200, 240 and 241 (6) claims as well as to his common law negligence claims (see NYSCEF Doc No. 133, Notice of Motion).
Summary Judgment Standards
Summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The party moving for summary judgment must present a prima facie case of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form demonstrating the absence of material issues of fact, and the failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see CPLR 3212 [b]; Smalls v AJI Industries, Inc., 10 NY3d 733 [2008]; Alvarez, 68 NY2d at 324). Once a prima facie showing has been made, however, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution or tender an acceptable excuse for the failure to do so; mere expressions of hope are insufficient to raise a genuine issue of fact (see Zuckerman v City of New York, 49 NY2d 557 [1980]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (see Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231 [1978]).
The Parties' Inter-Relationships
Plaintiff claims that on July 11, 2018, he sustained injuries during the course of his employment with non-party StructureTech New York ("StructureTech") (see NYSCEF Doc No. 156, Statement of Undisputed Facts ¶ 1). 
On March 24, 2016, Defendant 11 Hoyt Property Owner, L.P. ("11 Hoyt") entered into a Construction Management Agreement with Defendant Triton Construction Company, LLC ("Triton") to construct a residential tower at 11 Hoyt Street in Brooklyn, New York ("11 Hoyt Street Residential Project") (see id. ¶ 2). Pursuant to the agreement in question, Triton was tasked with hiring subcontractors for the project and coordinating various trades (see id. ¶ 3).
In turn, Triton entered into a subcontract on January 18, 2018 with StructureTech, Plaintiff's employer, for superstructure concrete work at 11 Hoyt Street. The contract was for the construction of a new mixed-use commercial, residential, and retail building (see id. ¶ 5).
The Duties of Plaintiff's Employer, StructureTech
StructureTech was the concrete superstructure contractor for the jobsite and was responsible for erecting the concrete superstructure (see NYSCEF Doc No. 152, Sarmiento Aff ¶ 5). To construct the concrete superstructure, StructureTech poured concrete into wooden forms (see NYSCEF Doc No. 156, Statement of Undisputed Facts ¶ 7). Once the forms were erected, they would have to be braced or shored, which could be accomplished by means of wood or metal (see NYSCEF Doc No. 152, Sarmiento Aff ¶ 7). The purpose of bracing was to secure the [*2]forms and lock them tightly to ensure that when the concrete is poured, the force of the concrete being placed does not destroy the formwork (see id. ¶ 8). When wooden braces were used to secure the forms, they would be nailed down (see NYSCEF Doc No. 156, Statement of Undisputed Facts ¶ 8). 
Neither 11 Hoyt nor Triton performed any work with regard to the construction of the concrete form work, including the installation of any wood or metal bracing or shoring (see id. ¶ 9).
StructureTech's superintendent foreman, Kristjian Haxhari, was onsite daily (see id. ¶ 10). StructureTech was exclusively responsible for the means and methods of the superstructure concrete work (see id. ¶ 11).
Defendants allege that neither 11 Hoyt nor Triton directed, supervised, provided tools or controlled the means or methods of Plaintiff's work on the jobsite at any time (see NYSCEF Doc No. 152, Sarmiento Aff ¶ 12). Defendants assert that Plaintiff received all of his direction, supervision, tools, as well as the means or methods of his work, from StructureTech and, specifically, from StructureTech Superintendent Kristjian Haxhari (see NYSCEF Doc No. 156, Statement of Undisputed Facts ¶ 13). 
Prelude to the July 11, 2018 Occurrence
Plaintiff began working at the 11 Hoyt Street Residential Project in June 2018 as a carpenter for StructureTech (see id. ¶ 14). Before beginning work on site, Plaintiff attended a site safety orientation class (see id. ¶ 15).
On July 11, 2018, Plaintiff was directed to assemble concrete framework supports with his co-worker, Luis Sarmiento (see id. ¶ 16). At approximately 7:30 a.m., Plaintiff went to the location of the alleged accident to set up an A-frame ladder to install a brace to provide additional horizontal support to the concrete shoring posts (see id. ¶ 17). 
Plaintiff's co-worker at StructureTech, Luis Sarmiento, an eyewitness to the occurrence, attests in an affidavit that Plaintiff selected the location to set up the A-frame ladder on the date of the occurrence (see NYSCEF Doc No. 152, Sarmiento Aff ¶ 16). 
The July 11, 2018 Occurrence
Plaintiff did not fall off the ladder at any time (see NYSCEF Doc No. 139, Plaintiff EBT Tr. at 105-110, 124-125). As Plaintiff admitted during his examination before trial:
Okay. So I came down. After I came down I stepped on that 2 by 4 and I fell down. And I fell down.
(Id. at 105 [emphasis added].)
Plaintiff climbed the A-frame ladder to hammer the horizontal bracing into place (see NYSCEF Doc No. 156, Statement of Material Facts ¶ 22). After accomplishing this task, Plaintiff descended the ladder (see NYSCEF Doc No. 139, Plaintiff EBT Tr. at 105). As [*3]Plaintiff testified during his examination before trial, the ladder did not fall in connection with the occurrence:
Q: Okay. Did the ladder fall after your accident?
A: Don't believe so, no. Don't believe so.
(Id. at 124-125.)
As Plaintiff's left foot was either on the last rung of the ladder or on the floor, he stepped with his right foot onto a piece of formwork support nailed into the concrete floor (see NYSCEF Doc No. 156, Statement of Undisputed Facts ¶ 25). The nailed down 2" x 4" formwork featured in a photograph (see NYSCEF Doc No. 156, Statement of Material Facts ¶ 26) was identified by eyewitness Luis Sarmiento, Plaintiff's co-worker at StructureTech, as the item that caused Plaintiff to twist his ankle after having descended the ladder (see id. ¶ 26). As Mr. Sarmiento attests in his affidavit:
15. I witnessed Mr. Trujillo Cruz's incident.
16. Shortly after 7:40 a.m. Mr. Trujillo Cruz twisted his right ankle on a 2" x 4" that was nailed to the ground. Just before his accident, Mr. Trujillo Cruz was working on a ladder. Mr. Trujillo Cruz chose the location to set up the ladder and had set up the ladder properly.
17. After Mr. Trujillo Cruz came off of a ladder and was standing on the ground, he then turned around and stepped on a 2" x 4" with his right foot twisting his ankle. He did not fall to the ground. He was not struck by any falling objects.
18. The photograph attached hereto as Exhibit "A" depicts the location where Mr. Trujillo Cruz [sic] incident took place.
19. The 2" x 4" bracing that was nailed to the ground that Mr. Trujillo Cruz tripped over is circled in red and attached to my affidavit as Exhibit "A."
20. After the incident I inspected the 2" x 4" bracing and it [sic] secured to the ground with nails and was being used to buttress the adjacent concrete form panels as depicted in Exhibit "A."
21. The 2" x 4" was not debris. The 2" x 4" was necessary to secure the concrete form panels so that they would remain straight and not "blow out."
(NYSCEF Doc No. 152, Sarmiento Aff ¶¶ 15-21.)
Defendants' Position
Defendants allege that Plaintiff was instructed by his supervisor, Kristjian Haxhari, not to [*4]work on A-frame ladders near where the form work was secured to the concrete flooring (see NYSCEF Doc No. 156, Statement of Undisputed Facts ¶ 27). Notwithstanding this admonition, Defendants allege that Plaintiff chose for no good reason to work on an A-frame ladder directly near the framework secured below (see id. ¶ 28).
Defendants' position is delineated in the affidavit submitted by eyewitness Luis Sarmiento, Plaintiff's co-worker at StructureTech, who attests as follows in his affidavit after describing the 2" x 4" bracing that he alleges led to the occurrence:
22. There were no other conditions which caused Mr. Trujillo Cru's [sic] right ankle to twist.
23. Mr. Trujillo Cruz never complained to me of any dangerous condition while working at the project.
24. The ladder Mr. Trujillo Cruz was using prior to the incident was in good working order.
25. The ladder was not in any way involved in his accident.
(NYSCEF Doc No. 152, Sarmiento Aff ¶¶ 22-25.).
Plaintiff's Purported Statement in the Immediate Aftermath of the Occurrence
Immediately after the occurrence, Plaintiff is alleged to have provided a statement, which reads, in part, as follows:
Plaintiff had completely come down from all the steps of the ladder and was standing firmly on the ground just prior to the accident. He turned around and stepped on the 2 x 4 with his right foot and twisted his ankle inwards.
(NYSCEF Doc No. 143, Plaintiff's Statement.)
Notably, the statement in question is in Spanish, does not feature a translation and, contrary to Defendants' representations, is not sworn.
Plaintiff's Position Reflected in his Deposition Transcript
During his deposition, Plaintiff initially testified that he stepped on the 2" x 4" after he came down off the ladder, after which his counsel interrupted him and appears to have prompted Plaintiff as to how to testify by asking whether it was as he was coming down the ladder or after he had come down off of the ladder, at which juncture Plaintiff modified his testimony, asserting that the accident occurred as he was coming down, and that he was still partially on the ladder when he stepped on the piece of form work (see NYSCEF Doc No. 139, Plaintiff EBT Tr. at 105, 108-109, 109-110, 112, 121-122).
As detailed below, this ostensible modification in testimony is of no moment in the Court's decision making process in that Plaintiff's accident is not of the type protected by Labor Law § 240 (1).
Critically for purposes of Plaintiff's Labor Law § 240 (1) claims, during his deposition, Plaintiff admitted as follows that he experienced no problems with the ladder:
Q: Okay. Did you have any trouble coming down the ladder? Did you have any issues with the ladder, I mean obviously, before your accident?
MR. DELISO: You are asking about problems with the ladder itself?
MS. SAMEER: Ladder, itself
THE WITNESS: No.
(NYSCEF Doc No. 139, Plaintiff EBT Tr. at 109-110.)
The Divergent Positions Espoused by the Parties as to the 2" x 4" Form Work
Defendants allege that StructureTech nailed the 2" x 4" formwork into the ground (see NYSCEF Doc No. 156, Statement of Material Facts ¶ 31). As eyewitness Luis Sarmiento, Plaintiff's co-worker at StructureTech, asserts in his affidavit: "After the incident I inspected the 2" x 4" bracing and it [sic] secured to the ground with nails and was being used to buttress the adjacent concrete form panels as depicted in Exhibit 'A' " (see NYSCEF Doc No. 152, Sarmiento Aff ¶¶ 22-25). 
Likewise, Defendants contend that photographs taken on the date of the occurrence of the 2" x 4" formwork reflect that it is nailed into the concrete floor in several locations (see NYSCEF Doc No. 156, Statement of Undisputed Facts ¶ 33).
Moreover, Defendants assert that, contrary to Plaintiff's position, the 2" x 4" formwork was integral to the concrete work on the jobsite as it is nailed to the floor to buttress and secure the formwork to ensure that the concrete being poured inside the formwork adhered with the jobsite specifications (id. ¶ 35).
In contrast, Plaintiff alleged during his deposition that the 2" x 4" formwork was unsecured to the floor as follows:
Q: Okay. So you said you stepped on a 2 by 4. Was the 2 by 4 loose or was it nailed to the ground?
A: It was loose.
(NYSCEF Doc No. 139, Plaintiff EBT Tr. at 111.) 
As shall appear below, the divergence between Plaintiff and Defendants as to the secured nature of the 2" x 4" formwork is immaterial in that the 2" x 4" formwork was integral to the work.
Dismissal on Summary Judgment of Plaintiff's Labor Law § 240 (1) Claim Is Warranted
Labor Law 240 (1) provides, in pertinent part, as follows:
All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.
Plaintiff's Labor Law § 240 (1) claim is subject to dismissal on summary judgment on the basis that Labor Law § 240 (1) is not applicable to the fact pattern at issue before the Court. Indeed, Labor Law § 240 (1) requires Plaintiff in this context to establish that his injuries resulted from the failure to provide him with an adequate safety device to protect him from an elevation-related risk.
As shall appear below, Plaintiff was not working at a significant height, his Labor Law § 240 (1) claim is unavailing. As the Second Department held in dismissing on summary judgment a plaintiff's Labor Law § 240 (1) claim on the basis that his fall from the back of a pickup truck did not constitute an elevation-related risk contemplated by the statute in that the distance was too limited to constitute the type of fall protective devices are designed to avert:
"[I]t is settled that 'the extraordinary protections of [Labor Law § 240 (1)] in the first instance apply only to a narrow class of dangers' " (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d at 96-97, quoting Melber v 6333 Main St., 91 NY2d 759, 762 [1998]). "More specifically, Labor Law § 240 (1) relates only to 'special hazards' presenting 'elevation-related risk[s]' " (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d at 97, quoting Rocovich v Consolidated Edison Co., 78 NY2d 509, 514 [1991]).
"[T]he protections of Labor Law § 240 (1) 'do not encompass any and all perils that may be connected in some tangential way with the effects of gravity' " (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d at 97, quoting Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993]).
" 'The contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured. It is because of the special hazards in having to work in these circumstances . . . [*5]that the Legislature has seen fit to give the worker the exceptional protection that section 240 (1) provides' " (Toefer v Long Is. R.R., 4 NY3d 399, 407 [2005], quoting Rocovich v Consolidated Edison Co., 78 NY2d at 514).
"Liability may, therefore, be imposed under the statute only where the 'plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential' " (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d at 97, quoting Runner v New York Stock Exch., Inc., 13 NY3d 599, 603 [2009]).
The Court of Appeals and this Court have repeatedly held that because the distance between the back of a pickup or flatbed truck and the ground is so small, the risk of a worker falling off the back of a pickup or flatbed truck is, as a matter of law, not an extraordinary elevation-related risk protected by Labor Law § 240 (1), but rather, one of the usual and ordinary dangers of a construction site (see Toefer v Long Is. R.R., 4 NY3d at 407-409; Dilluvio v City of New York, 95 NY2d at 929; Biscup v E.W. Howell, Co., Inc., 131 AD3d 996, 998 [2015]; Lavore v Kir Munsey Park 020, LLC, 40 AD3d 711, 712 [2007]; Hughes v County of Nassau, 286 AD2d 476, 476-477 [2001]; see also Bond v York Hunter Constr., 95 NY2d 883, 884-885 [2000] [involving a fall from a demolition vehicle]).
(Eddy v John Hummel Custom Bldrs., Inc., 147 AD3d 16, 20-21 [2d Dept 2016].)
That Plaintiff was not working at a significant height at the time of the occurrence cannot plausibly be gainsaid.
As detailed more fully above, Plaintiff ostensibly asserted in a post-accident written statement that, having fully descended the ladder at the time of the occurrence, both his feet were firmly on the ground in the moments preceding the accident when he stepped on the 2" x 4" (see NYSCEF Doc No. 143, Plaintiff's Statement). Insofar as the statement in question, proffered by Defendants as part of their motion for summary judgment, is in Spanish, untranslated and unauthenticated, such statement is of no evidentiary value in the context of a motion for summary judgment and shall thus not be considered by the Court.
As delineated in greater depth above, during his deposition, Plaintiff provided two incongruous versions of the occurrence. Specifically, Plaintiff first testified that he stepped on the 2" x 4" after he came down off of the ladder, at which juncture his counsel appears to have prompted him to recalibrate his testimony by asking whether the accident arose when he was coming down the ladder or after he had come down off of the ladder, at which juncture Plaintiff recast his testimony, alleging that the accident arose as he was coming down the ladder and that he remained partially on the ladder when he stepped on the piece of formwork and fell down (see NYSCEF Doc No. 139, Plaintiff EBT Tr. at 105, 108-109, 109-110, 112, 121-122).
Plaintiff's reframing of his deposition testimony is immaterial for purposes of the Labor Law § 240 (1) analysis. Irrespective of whether Plaintiff was on solid ground or had one foot on [*6]the ladder at the time of the occurrence, his Labor Law § 240 (1) claim is unavailing in that the accident did not arise as a result of the type of extraordinary elevation-related peril protected by Labor Law § 240 (1).
For instance, in a case in which the plaintiff tripped on a concealed portable light located under a cloth towards the foot of a ladder while plaintiff was dismounting from the bottom rung of a ladder, the Court of Appeals held as follows that his injuries resulted from the ordinary dangers at a construction site, as distinguished from the extraordinary elevation-related risks protected by Labor Law 240 (1), warranting the dismissal on summary judgment of his Labor Law 240 (1) claim:
According to plaintiffs' submissions on their motion for summary judgment, the accident occurred when, while working on the installation of a sprinkler system at a Queens construction site, plaintiff Reding Nieves (hereinafter plaintiff) stepped from the bottom rung of a ladder onto a drop cloth covering the carpeted floor. As he did so, he allegedly tripped over a concealed portable light located underneath the cloth. Only his right foot remained on the ladder as his left foot hit the concealed object on the floor, causing him to twist his ankle, fall and incur injuries. Based on these facts, summary judgment should have been granted to defendant Five Boro dismissing plaintiff's Labor Law § 240 (1) cause of action.
The extraordinary protections of Labor Law § 240 (1) extend only to a narrow class of special hazards, and do "not encompass any and all perils that may be connected in some tangential way with the effects of gravity" (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [emphasis in original]). The core objective of the statute in requiring protective devices for those working at heights is to allow them to complete their work safely and prevent them from falling. Where an injury results from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first instance, no section 240 (1) liability exists (see, id.; see also, Melber v 6333 Main St., 91 NY2d 759, 763-764).
Here, the ladder was effective in preventing plaintiff from falling during performance of the ceiling sprinkler installation. Thus, the core objective of section 240 (1) was met. As in Ross and Melber, plaintiff's injury resulted from a separate hazard wholly unrelated to the danger that brought about the need for the ladder in the first instancean unnoticed or concealed object on the floor. There was no evidence of any defective condition of the ladder or instability in its placement. Hence, the risk to plaintiff was not the type of extraordinary peril section 240 (1) was designed to prevent. Rather, his injuries were the result of the usual and ordinary dangers at a construction site. Therefore, plaintiff is not entitled to Labor Law § 240 (1) protection because no true elevation-related risk was involved here.
(Nieves v Five Boro A.C. & Refrig. Corp., 93 NY2d 914, 915-916 [1999] [emphasis added].)
Further warranting the dismissal on summary judgment of Plaintiff's Labor Law § 240 [*7](1) claim, in both versions of the accident propounded by Plaintiff during his deposition — namely, either that Plaintiff had one foot on the ladder as he stepped on the 2" x 4" at the time of the occurrence, causing him to fall, or, alternatively, that he was on solid ground when he stepped on the 2" x 4") (see NYSCEF Doc No. 139, Plaintiff EBT Tr. 105, 108-109 109-110, 112, 121-122) — Plaintiff fell as a result of stepping on the 2" x 4." Such occurrence, which does not implicate a significant elevation-related risk, cannot be construed as coming within the purview of Labor Law § 240 (1).
For instance, in Parker v Ariel Assoc. Corp. (19 AD3d 670, 671 [2d Dept 2005]), plaintiff, who was hired to perform shoring work at a construction site, carried, along with four other workers, a steel I-beam, weighing between 300 and 400 pounds, over a distance of five feet, and planned to position it atop a scaffold. As plaintiff was holding the steel I-beam above his head, a co-worker tripped over a piece of plywood which was part of the floor, causing the steel I-beam to fall to the ground, allegedly leading plaintiff to injure his elbow as he endeavored to prevent the steel I-beam from landing on the ground (see id.). In affirming the Supreme Court's dismissal on summary judgment of plaintiff's Labor Law § 240 (1) claim, the Second Department articulated its rationale as follows:
The cause of action based upon violation of Labor Law § 240 (1) was properly dismissed as the plaintiff was not subject to an elevation-related hazard to which the protective devices enumerated in the statute apply (see Toefer v Long Is. R.R., 4 NY3d 399 [2005]; Rocovich v Consolidated Edison Co., 78 NY2d 509, 514-515 [1991]; Alvia v Teman Elec. Contr., 287 AD2d 421 [2001]). Rather, the plaintiff was exposed to the "usual and ordinary dangers of a construction site, and not the extraordinary elevation risks envisioned by Labor Law § 240 (1)" (Rodriguez v Margaret Tietz Ctr. for Nursing Care, 84 NY2d 841, 843 [1994]; Alvia v Teman Elec. Contr., supra).
(Id. 671 [emphasis added].)
In short, Plaintiff alleges that he twisted his right ankle while either stepping off of a ladder or working at ground level (see NYSCEF Doc No. 139, Plaintiff EBT Tr. 105, 108-109, 109-110, 112, 121-122). Under either scenario, Plaintiff was not exposed to the type of significant elevation-related risk that our Legislature intended to protect under the auspices of Labor Law § 240 (1). Instead, Plaintiff was exposed to the mundane dangers inherent in construction work. Accordingly, Labor Law 240 (1) is inapplicable to the present case, and, as such, summary judgment on the Labor Law § 240 (1) claim is warranted.
None of the Industrial Code Provisions Plaintiff Identified to Buttress his Labor Law § 241 (6) Claim Are Applicable to the Present Case
Plaintiff's Labor Law 241 (6) cause of action must be dismissed since he cannot establish a predicate violation of any Industrial Code section.
Labor Law 241 (6) reads, in pertinent part, as follows:
All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
* * *
6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.
To establish liability under Labor Law § 241 (6), a site safety statute applicable to owners, contractors and their agents, it is incumbent on a plaintiff to establish a violation of a specific regulation under the New York Industrial Code. As our State's highest court explained in a seminal Labor Law case in granting defendant's motion for summary judgment dismissing a welder plaintiff's Labor Law § 241 (6) cause of action:
Accordingly, we hold that, for purposes of the nondelegable duty imposed by Labor Law § 241 (6) and the regulations promulgated thereunder, a distinction must be drawn between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards by invoking the "[g]eneral descriptive terms" set forth and defined in 12 NYCRR 23-1.4 (a). The former give rise to a nondelegable duty, while the latter do not. Since the regulation on which plaintiff relies falls into the latter category, he cannot benefit from the reduced burden of proof applicable to causes of action asserted under Labor Law § 241 (6).
(Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 505 [1993].)
Accordingly, Industrial Code provisions relied upon by Plaintiff in tandem with his Labor Law § 241 (6) claim must feature a specific standard. Reliance on a non-specific regulatory provision containing generalized standards of care is insufficient to support a Labor Law § 241 (6) cause of action (see Simmons v City of New York, 165 AD3d 725, 729 [2d Dept 2018]). As the Second Department explained in Simmons: "As a predicate to a section 241 (6) cause of action, a plaintiff must allege a violation of a concrete specification promulgated by the Commissioner of the Department of Labor in the Industrial Code. . . ." (id.) 
Based on Plaintiff's Verified Bill of Particulars, it is alleged that Defendants violated the following Industrial Codes: Sections 23-1.5 and 23-1.7 (see NYSCEF Doc No. 137, Bill of Particulars ¶ 20). As established below, the provisions in question cannot serve as adequate foundations to support Plaintiff's Labor Law § 241 (6) claim.
Industrial Code Section 23-1.5 Cannot Serve as a Vehicle to Support Plaintiff's Labor Law § 241 (6) Claim
In his Verified Bill of Particulars, Plaintiff posits that Defendants violated Industrial Code 23-1.5, without specifying which subsection of the Industrial Code in question was violated (see id.).
Insofar as three subsections are featured under the Industrial Code in question, the Court is constrained to analyze each subsection. Industrial Code § 23-1.5 reads as follows:
These general provisions shall not be construed or applied in contravention of any specific provisions of this Part (rule).
(a) Health and safety protection required. All places where employees are suffered or permitted to perform work of any kind in construction, demolition or excavation operations shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection for the lives, health and safety of such persons as well as of persons lawfully frequenting the area of such activity. To this end, all employers, owners, contractors and their agents and other persons obligated by law to provide safe working conditions, personal protective equipment and safe places to work for persons employed in construction, demolition or excavation operations and to protect persons lawfully frequenting the areas of such activity shall provide or cause to be provided the working conditions, safety devices, types of construction, methods of demolition and of excavation and the materials, means, methods and procedures required by this Part (rule). No employer shall suffer or permit an employee to work under working conditions which are not in compliance with the provisions of this Part (rule), or to perform any act prohibited by any provision of this Part (rule).
(b) General requirement of competency. For the performance of work required by this Part (rule) to be done by or under the supervision of a designated person, an employer shall designate as such person only such an employee as a reasonable and prudent man experienced in construction, demolition or excavation work would consider competent to perform such work.
(c) Condition of equipment and safeguards.
(1) No employer shall suffer or permit an employee to use any machinery or equipment which is not in good repair and in safe working condition.
(2) All load carrying equipment shall be designed, constructed and maintained throughout to safely support the loads intended to be imposed thereon.
(3) All safety devices, safeguards and equipment in use shall be kept sound and operable, and shall be immediately repaired or restored or immediately removed from the job site if damaged.
To the extent that Plaintiff alleges in his Verified Bill of Particulars that Defendants violated Industrial Code 23-1.5 (a)-(b), which concern the general safety responsibilities of employers, such provisions are not actionable under Labor Law § 241 (6) as they are overly general in nature.
As the Second Department held in affirming the Supreme Court's dismissal on summary judgment of the Labor Law § 241 (6) claim asserted by an ironworker plaintiff insofar as such claim was premised on a violation of Industrial Code 23-1.5 (b):
Here, the Supreme Court properly granted those branches of the moving defendants' motion which were for summary judgment dismissing, insofar as asserted against them, so much of the cause of action alleging Labor Law § 241 (6) violations premised upon three of the enumerated Industrial Code provisions.
* * *
Third, 12 NYCRR 23-1.5 (b) serves to amplify other provisions of the Industrial Code that require a designated individual to perform or supervise work, and thus does not provide an implementing regulation upon which to predicate a Labor Law § 241 (6) cause of action (see Smith v Homart Dev. Co., 237 AD2d 77, 80 [1997]; see generally Sharrow v Dick Corp., 233 AD2d 858, 860-861 [1996]).
(Guallpa v Canarsie Plaza, LLC, 144 AD3d 1088, 1091 [2d Dept 2016].)
With respect to Industrial Code 23-1.5 (c), which requires that "[a]ll safety devices, safeguards and equipment in use shall be kept sound and operable, and shall be immediately repaired or restored or immediately removed from the job site if damaged," such provision has been deemed specific enough to support a Labor Law § 241 (6) claim. However, this provision is not applicable to the fact pattern at issue in the present case as Plaintiff does not allege that he was provided with an inoperable or damaged ladder. To the contrary, Plaintiff admitted as follows during his deposition that he experienced no problems with the ladder:
Q: Okay. Did you have any trouble coming down the ladder? Did you have any issues with the ladder, I mean obviously, before your accident?
MR. DELISO: You are asking about problems with the ladder itself?
MS. SAMEER: Ladder, itself
THE WITNESS: No.
(NYSCEF Doc No. 139, Plaintiff EBT Tr. 109-110.)
In short, Plaintiff's endeavor to rely on Industrial Code § 23-1.5 to buttress his Labor Law 241 (6) claim is unavailing.
Industrial Code 23-1.7 Cannot Serve as an Adequate Foundation to Support Plaintiff's Labor Law § 241 (6) Claim
In his Verified Bill of Particulars, Plaintiff alleges that Defendants violated Industrial Code § 23-1.7, without setting forth which subsection of the subject Industrial Code was violated (see NYSCEF Doc No. 137, Bill of Particulars ¶ 20). 
Given that various subsections are featured under the Industrial Code provision in question, which relates to an employer's responsibility to protect its employees from general hazards, the Court has no alternative but to analyze such subsections. 
Industrial Code § 23-1.7 (a) relates to "overhead hazards" and is hence not applicable to the facts testified to by Plaintiff at his deposition, during which Plaintiff remained silent as to any overhead hazards.
Industrial Code § 23-1.7 (b), which establishes the requirement that "[e]very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing," as well as governs "[b]ridge or highway overpass construction" matters, is not germane to the occurrence that allegedly befell Plaintiff.
Industrial Code § 23-1.7 (c), which pertains to "drowning hazards," is inapplicable to the present case. 
Industrial Code § 23-1.7 (d), the frequently-cited "[s]lipping hazards" provision, which pertains to "[i]ce, snow, water, grease and any other foreign substance," reads, in pertinent part, as follows:
(d) Slipping hazards. Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing.
The provision in question, namely, Industrial Code § 23-1.7 (d), is inapplicable to the fact pattern at issue in the present case since Plaintiff did not testify during his deposition that any slipping hazard, such as ice, snow, water or grease caused the occurrence.
Industrial Code § 23-1.7 (e) reads, in pertinent part, as follows:
(e) Tripping and other hazards.
(1) Passageways. All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping. Sharp projections which could cut or puncture any person shall be removed or covered.
(2) Working areas. The parts of floors, platforms and similar areas where persons work [*8]or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed.
The subject provision, to wit, Industrial Code § 23-1.7 (e), which relates to tripping hazards in passageways and working areas, is inapplicable to the present case as Plaintiff did not allege during his deposition that the occurrence arose as a result of a tripping hazard.
Notably, the above-quoted Industrial Code § 23-1.7 (e) (2) requires working areas to be free from dirt and debris. In the present case, the nailed 2" x 4" was not "debris" and, instead was an integral part of the work performed. Section 23-1.7 only applies to debris and dirt, and not to any structure that is part of the work performed.
As held by the First Department in a case in which the plaintiff tripped over wire mesh on a building construction site, such plaintiff's position that the defense violated Industrial Code § 23-1.7 (e) (2) was unavailing in that the wire mesh over which he tripped was an integral part of the floor under construction:
Plaintiff tripped over wire mesh installed on top of a metal grid, known as "Q-decking," covering an unfinished floor of the building under construction, which mesh becomes part of the structure of the floor when concrete is poured in the Q-decking. Although the Industrial Code regulations cited by plaintiff (12 NYCRR 23-1.7 [e] [1], [2]) are sufficiently specific to support a Labor Law § 241 (6) cause of action (Adams v Glass Fab, 212 AD2d 972), plaintiff fails to raise an issue of fact as to whether there was a violation of either provision, since, as to the first, he was injured not in a passageway but while working in an open area, and, as to the second, which plaintiff appears to have abandoned on appeal, the wire mesh over which he tripped was an integral part of the floor being constructed (supra; see also, Lenard v 1251 Ams. Assocs., 241 AD2d 391, 392, appeal withdrawn 90 NY2d 937; Garcia v Renaissance Gardens Assocs., 242 AD2d 463, 464). (Vieira v Tishman Constr. Corp., 255 AD2d 235, 236 [1st Dept 1998].)
Plaintiff appears to have sought to create issues of fact regarding Industrial Code § 23-1.7 (e) (2) by providing testimony during his deposition that diverges from his prior written, albeit unsworn and untranslated, statement. Specifically, Plaintiff testified during his deposition that the 2" x 4" was not secured at the time of the accident, but rather "was loose" (see NYSCEF Doc No. 139, Plaintiff EBT Tr. at 111). Even were one to credit Plaintiff's deposition testimony on this issue, such testimony does not signify that the 2" x 4" was debris and not integral to the work being performed. Indeed, New York courts have held that whether an item is secured is immaterial to the issue of whether the item is integral to the work. As the Second Department held in a case in which it determined that the unsecured protective material upon which the plaintiff, a tile setter working on a construction site, slipped and fell was integral to the tile work:
The plaintiff, a tile setter, allegedly was injured while working on a project to construct a [*9]30-story condominium building. The plaintiff alleges that he slipped and fell on unsecured rosin paper placed on a three-step interior pool staircase. The plaintiff commenced this action against the defendants Edge 11211, LLC, Douglas Development, and Levine Builders (hereinafter collectively the defendants), alleging violations of Labor Law §§ 200, 240 (1), and 241 (6), and common-law negligence. After discovery, the defendants moved for summary judgment dismissing the complaint, and the Supreme Court granted the motion.
* * *
The defendants also established their prima facie entitlement to judgment as a matter of law dismissing the Labor Law § 241 (6) cause of action, premised upon a violation of 12 NYCRR 23-1.7 (d), by establishing that the protective rosin paper upon which the plaintiff slipped was an integral part of the tile work (see Johnson v 923 Fifth Ave. Condominium, 102 AD3d 592 [2013]; Rajkumar v Budd Contr. Corp., 77 AD3d 595 [2010]; Galazka v WFP One Liberty Plaza Co., LLC, 55 AD3d 789 [2008]). As such, the rosin paper does not constitute a "foreign substance" within the meaning of 12 NYCRR 23-1.7 (d) (see O'Sullivan v IDI Constr. Co., Inc., 7 NY3d 805 [2006]). In opposition, the plaintiff failed to raise a triable issue of fact.
(Lopez v Edge, 150 AD3d 1214, 1215 [2d Dept 2017].)
Further buttressing the notion that Plaintiff's reliance on Industrial Code 23-1.7 (e) (2) is misplaced, in Parker v Ariel Assoc. Corp. (19 AD3d 670, 671 [2d Dept 2005]), plaintiff and his co-workers were working on a construction site on the ground floor carrying a heavy steel I-beam to position it on a scaffold, when one of plaintiff's co-workers tripped over a piece of plywood covering the floor, causing plaintiff to sustain injuries as he sought to prevent the steel I-beam from landing on the ground. The plaintiff alleged that defendants violated Labor Law § 241 (6), predicated on a violation of Industrial Code § 23-1.7 (e) (2). However, the Second Department granted summary judgment to defendants on the basis that this subsection was "inapplicable as that section requires that floors or other work areas be kept free from the accumulation of dirt and debris, and from scattered tools and materials and sharp projections" in that "the accident allegedly was caused by a piece of plywood which was part of the floor" (id. at 672).
Last, Industrial Code § 23-1.7 (f), which pertains to vertical passageways, is inapplicable to the facts alleged by Plaintiff. Inapplicable too are subdivisions (g) and (h), which pertain respectively to air-contaminated or oxygen deficient work areas and corrosive substances.
Based on the foregoing, the branch of Defendants' motion for an order granting summary judgment dismissing Plaintiff's Complaint as to his Labor Law 241 (6) claims is granted.[FN1]

Plaintiff's Labor Law § 200 and Common Law Negligence Claims Are Unavailing
As shall appear below, Plaintiff's Labor Law § 200 and common law negligence claims are subject to dismissal on summary judgment. Labor Law § 200 is but a codification of the common law duty of general contractors and property owners to provide workers a safe place to work (see Comes v New York State Elec. & Gas Corp., 82 NY2d 876 [1993]). 
Claims made under Labor Law § 200 and common law negligence theories fall under two categories: (1) those in which the worker alleges to have been injured via the means and methods of the work performed; and (2) those in which the worker alleges to have been injured due to a dangerous or defective premises condition within the jobsite (see id.). Defendants should not be held liable under both theories.
(1) Defendants Neither Supervised nor Controlled the Means and Methods of Plaintiff's Work
Plaintiff's efforts to posit that his accident was the fruit of the means and methods of his work are unavailing. To be held liable in a circumstance where the claim arises out of the means and methods of the work, the defendant must have been responsible to control the means or methods of Plaintiff's work. As the Second Department has held in a case involving a worker plaintiff who fell from a roof at a construction site while taking measurements in preparation for stonework performed with respect to the roof of the building:
To be held liable pursuant to Labor Law § 200 in a case such as this, where the claim arises out of the methods or means of the work, a defendant must have authority to supervise or control the work (see Szczepanski v Dandrea Constr. Corp., 90 AD3d 642, 644 [2011]; Rodriguez v Gany, 82 AD3d 863, 865 [2011]; Rojas v Schwartz, 74 AD3d 1046 [2010]; Ortega v Puccia, 57 AD3d 54 [2008]).
(Gallagher v Resnick, 107 AD3d 942, 945 [2d Dept 2013].).
A Labor Law § 200 case falls under the "means and methods" paradigm when the incident is directly connected to the manner in which an employee was performing her or his work (see Przyborowski v A&M Cook, LLC, 120 AD3d 651, 652 [2d Dept 2014] [finding that the occurrence arose as a result of the means and methods of plaintiff's work in that the occurrence arose when plaintiff fell while descending an unsecured A-frame ladder provided by his employer to move between the upper and lower level of the worksite]).
As detailed above, neither 11 Hoyt nor Triton were responsible for supervision or controlling the means and methods of Plaintiff's work, unlike Plaintiff's employer StructureTech. As such, Defendants cannot be held liable under Labor Law 200, or common law negligence, warranting the dismissal of these claims on summary judgment. As the Second Department held in Przyborowski:
Cook established, prima facie, that the plaintiff's injuries arose as a result of the methods and means of his work (see Cody v State of New York, 82 AD3d 925 [2011]; McFadden v Lee, 62 AD3d 966 [2009]), that it had no authority to supervise or control the plaintiff's work, and that it did not provide the subject ladder. Therefore, Labor Law § 200 imposed no liability upon Cook (see Klimowicz v Powell Cove Assoc., LLC, 111 AD3d 605, 605 [2013]; Cambizaca v New York City Tr. Auth., 57 AD3d 701, 702 [2008]; Ortega v Puccia, 57 AD3d 54, 60-63 [2008]). In opposition, the plaintiff failed to raise a triable [*10]issue of fact. Accordingly, the Supreme Court properly granted that branch of Cook's cross motion which was for summary judgment dismissing the cause of action alleging a violation of Labor Law § 200.
(Id. 652-653.)
(2) Defendants Did Not Have Actual or Constructive Notice of any Alleged Defective Condition
Plaintiff does not allege that any defective condition caused or created the occurrence. All parties, including Plaintiff, testified that there is no evidence that Defendants had either actual or constructive notice of any purported defective conditions that may have led to the occurrence. For instance, during his deposition, Plaintiff admitted as follows that he experienced no problems with the ladder:
Q: Okay. Did you have any trouble coming down the ladder? Did you have any issues with the ladder, I mean obviously, before your accident?
MR. DELISO: You are asking about problems with the ladder itself?
MS. SAMEER: Ladder, itself
THE WITNESS: No.
(NYSCEF Doc No. 139, Plaintiff EBT Tr. at 109-110.)
Accordingly, no credible argument can be advanced that Defendants had actual or constructive notice of any defective conditions on the project site.
In sum, insofar as Plaintiff's claims cannot survive under either a theory of Labor Law § 200 or common law negligence, such claims are to be dismissed on summary judgment.
Conclusion
Defendants 11 Hoyt Property Owner, L.P. and Triton Construction Company, LLC made out a prima facie case of entitlement to summary judgment dismissing causes of action sounding in Labor Law §§ 200, 240 (1), and 241 (6) claims, and common law negligence, which formed the basis of Plaintiff's Complaint. Plaintiff failed to establish the existence of material issues of fact. As a matter of law, accepting Plaintiff's factual allegations as true, Plaintiff lacks a viable Complaint against the two moving Defendants.
Accordingly, it is hereby ORDERED that Defendants' motion for an order granting summary judgment dismissing Plaintiff's Complaint is GRANTED in its entirety.
E N T E R
AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:. Plaintiff's Complaint references Safety and Health Regulations for Construction promulgated by the federal Occupational Safety & Health Administration (see NYSCEF Doc No. 135, Complaint ¶ 74, but they cannot form the basis of a Labor Law § 241 (6) cause of action (see Vernieri v Empire Realty Co., 219 AD2d 593 [2d Dept 1995]).